UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KELLY DANIELLE WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-308 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 10 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff Kelly Danielle White seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 7, 2009, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began March 24, 2008. [Tr. 174]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On February 2, 2011, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 35-60]. On February 10, 2011, the ALJ found that the Plaintiff was not disabled during the alleged period of disability.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 24, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: a schizoaffective disorder with bipolar and psychotic features; borderline intellectual functioning; and cannabis abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can only perform simple, repetitive, non-detailed tasks. Coworker and public contact should be no more than casual and infrequent. Supervision must be direct and non-confrontational, and changes in the workplace must be infrequent and gradually introduced.

6. The claimant is capable of performing past relevant work as a housekeeper, dishwasher, and cook helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 24, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 17-29].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3

3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).


III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C.

4

§ 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson,

5

378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.     POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred by not affording proper weight to the opinions of Michael F. Smith, M.D. [Doc. 11 at 10]. The Plaintiff also argues that "the substantial evidence of the record indicates Plaintiff's mental impairments are more limiting than found by the ALJ and are, in fact, disabling." [Doc. 11 at 10]. Thus, the Plaintiff argues that the ALJ erred in weighing the evidence in the record relating to her mental impairments. Specifically, she contends the ALJ erred in evaluating the findings of Jodie Castellani, Ph.D. The Plaintiff maintains that the ALJ's decision is not supported by substantial evidence.

The Commissioner responds that the ALJ's decision is supported by substantial evidence. The Commissioner maintains that the ALJ properly considered the opinion of Dr. Smith and determined that certain overly-restrictive findings by Dr. Smith should be afforded little weight. [Doc. 16 at 8-9]. The Commissioner argues that the ALJ properly weighed the other evidence in the record, including the opinions of Jodie Castellani, Ph.D. [Doc. 16 at 12-14].

6

## V.    ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

## A.    The Opinions of Michael F. Smith, M.D.

On May 2, 2010, the Plaintiff was brought into the emergency room at Blount Memorial Hospital after being found unresponsive on the floor by her boyfriend after taking certain unidentified substances.  [Tr. 442].  The relevant treatment records with Dr. Smith begin at the time of this episode and continue through the date of the ALJ's decision.[1]  In his treatment notes from December 12, 2008, Dr. Smith explained, "She has applied for disability, and I think this is probably a good thing for her.  I do not see her being able to hold down a job in her current situation."  [Tr. 412].

On July 29, 2010, Dr. Smith completed a worksheet entitled "Medical Residual Functional Capacity Questionnaire," consisting of five pages of a variety of multiple-choice questions, short-answer questions, and questions calling for lists or findings.  [Tr. 603-07].  In this form, Dr. Smith states that he sees the Plaintiff each month for approximately fifteen minutes to address her medication and give counseling.  He described her response to treatment as "fair" and described her prognosis as "guarded."  [Tr. 603].  In the section reserved for clinical findings he stated: "paranoia, auditory hallucinations, obsessional thinking, mood lability."  [Tr. 603].  On a grid of potential symptoms, he marked symptoms consistent with these findings, such as: "Mood disturbance," "Recurrent obsessions or compulsions which are a source of marked distress."  [Tr. 604].  He also marked: "Substance dependence."[2]  [Tr. 604].

---

[1] The Plaintiff submitted a previous application for disability which was dismissed on September 19, 2007.  It appears that the Plaintiff may have been receiving treatment from Dr. Smith during the previously-claimed period of disability but it is not apparent from the record.  Regardless, the alleged period of disability in this case began March 24, 2008, and the Court has considered the evidence accordingly.

[2] The Plaintiff states that on November 30, 2010, "Dr. Smith again opined Plaintiff has a severe impairment

7

Dr. Smith rated sixteen areas of mental functioning, using five rating choices: "Unlimited or Very Good," "Limited but satisfactory," "Seriously limited, but not precluded," "Unable to meet competitive standards," and "No useful ability to function." Dr. Smith indicated that the Plaintiff had a limited but satisfactory ability to ask simple questions or request assistance. He indicated that in all other areas the Plaintiff had serious limitations, was unable to meet competitive standards, or had no useful ability to function. These abilities included *inter alia* the Plaintiff's ability to understand and remember short, simple instructions, her ability to complete a normal workday or carry on a routine, her ability to accept instructions and get along with others, her ability to deal with stress, and her ability to be aware of normal hazards and take appropriate precautions. [Tr. 605].

In another portion of the form, Dr. Smith stated that the Plaintiff would be unable to meet competitive standards in carrying out detailed instructions, making realistic goals, and dealing with the stress of semiskilled and skilled work. He indicated that she would have limited but satisfactory ability to interact appropriately with the general public and adhere to standards of neatness and cleanliness, but she was seriously limited in her ability to travel to unfamiliar places or use public transportation. In support of these limitations, Dr. Smith noted that the Plaintiff has "difficulty organizing thinking [and] hallucinatory experiences." [Tr. 606].

Dr. Smith indicated that the Plaintiff: did not have a decreased I.Q.; would miss more than four days per month from work; and had impairments reasonably consistent with the

---

independent of any substance abuse." [Doc. 11 at 12]. Counsel for the Plaintiff submitted supplement to the original "Medical Residual Functional Capacity Questionnaire," completed by Dr. Smith, but the value of this form is subject to debate. Counsel for the Plaintiff mailed Dr. Smith a one page letter stating that the Plaintiff was applying for disability. The letter continued, "We understand you are treating the above-mentioned patient for a serious emotional disorder. We would appreciate your opinion as to whether the person has a severe impairment independent of any substance abuse." Immediately thereafter the letter contained a blank "yes" space and a blank "no" space; Dr. Smith put an 'X' by "yes." Dr. Smith left the section designated for "comments" blank. [Tr. 648].

8

symptoms and functional limitations described in this evaluation. Dr. Smith declined to give any further explanation of his selections when prompted by the form. [Tr. 607].

Dr. Smith completed a second form on November 30, 2010, entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)." [Tr. 649-50]. Dr. Smith indicated that the Plaintiff had "poor/none" of every aspect of Plaintiff's ability on which he was questioned, including: her ability to function independently, use judgment with the public, follow work rules, carry out complex or detailed instructions, behave in an emotionally stable manner, relate predictably in a social situation, or demonstrate reliability. The only areas in which Dr. Smith noted that the Plaintiff retained "fair" capacity were her ability to carry out simple instructions and maintain personal appearance. Dr. Smith noted the Plaintiff "has problems with memory retention" and "can easily become psychotic." [Tr. 650]. He indicated that the Plaintiff could not manage her benefits in her own best interest. [Tr. 650].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the Commissioner does not dispute Dr. Smith's status as a treating physician, [see Doc. 16 at 4], and the Court finds it is well-established that Dr. Smith was the Plaintiff's treating psychiatrist. Therefore, if Dr. Smith's opinions as to the nature and severity of the Plaintiff's mental impairment are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record, they must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

In this case, the ALJ found that the opinions were not well-supported by the evidence in the record and were inconsistent with the other substantive evidence in the record. In his opinion, the ALJ described, at length, Dr. Smith's findings in the "Medical Residual Functional Capacity Questionnaire," completed July 29, 2010. After reviewing the findings, the ALJ discussed the weight afforded to the findings, stating:

> To the extent this over-all medical opinion supports the residual functional capacity, the undersigned gives it significant weight because Dr. Smith is a treating physician. However, to the extent this opinion conflicts with the residual functional capacity, it receives little weight because it is not consistent with the

10

claimant's activities of daily living and Dr. Smith does not specify any objective findings from testing or observation to support this assessment. Specifically, the claimant herself reported getting along well with authority figures, and the claimant interacts with her family and takes care of grandchildren. Regarding concentration issues, the claimant reported being able to concentrate on a television program for multiple hours at a time at the hearing, and again, the claimant's family trusts her to watch her grandchildren for overnight stays. Furthermore, there are several limitations present in the residual functional capacity corresponding to several of these limitations from Dr. Smith.

[Tr. 25].

The ALJ also discussed the form completed in November 2010, at length. He explained his decision to discount some of the findings contained therein, by stating *inter alia*:

> Dr. Smith opined the claimant suffers "poor or no ability" to understand, remember and carry out complex job instructions or detailed job instructions, but she retains a fair ability to understand, remember and carry out simple job instructions. Again, the undersigned finds this medical opinion is consistent with the residual functional capacity that limits the claimant to simple, repetitive, non-detailed tasks. Finally, Dr. Smith stated the claimant has poor or no ability in her capacity to behave in an emotionally stable manner, relate[] predictability in social situations, and demonstrate reliability, and she has a fair ability to maintain personal appearance. To the extent this over-all medical opinion supports the residual functional capacity, the undersigned gives it significant weight because Dr. Smith is a treating physician. However, to the extent this opinion conflicts with the residual functional capacity, it receives little weight because it is not consistent with the claimant's activities of daily living and Dr. Smith does not specify any objective findings from testing or observation to support this assessment.

[Tr. 25-26].

The ALJ summarized his reasons for discounting both opinions by stating:

> Dr. Smith's opinions support the residual functional capacity in many ways. However, the undersigned gives the over-restrictive portions of Dr. Smith's opinion little weight for numerous reasons. Additionally, the possibility always exists that a doctor may

11

express an opinion in an effort to assist a patient with whom he or she sympathizes for one reasons or another. . . . While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Furthermore, Dr. Smith's opinion is suspect because he does not mention the extensive and overwhelming evidence of major drug use by the claimant, and Dr. Smith does not refer to the claimant's current treatment. Dr. Smith's opinions are over-restrictive and patently sympathetic to the claimant's subjective complaints, and they are unsupported by the objective medical findings.

[Tr. 26].

Despite this explanation, the Plaintiff argues that the ALJ erred in evaluating and affording weight to Dr. Smith's findings. In her brief, the Plaintiff reviews, extensively, her treatment with Dr. Smith and the findings from the forms discussed above. [Doc. 11 at 10-12, 16-17]. The Plaintiff, however, offers little in the way of argument and instead asserts generally that "Dr. Smith's opinions deserved great weight, yet the ALJ only noted accordingly weight to the portions of these opinions which did not conflict with the ALJ's own [residual functional capacity] conclusion [;] this was error." [Doc. 11 at 13]. The Plaintiff does not identify specific evidence that would undermine the ALJ's determination that Dr. Smith's opinions were overly restrictive, were not supported by the evidence in the record, and were inconsistent with the other substantive evidence in the record. She restates her medical history as a whole without directing the Court to how any portion of the record would support the specific findings indicated by Dr. Smith – *e.g.* that the Plaintiff had poor or no ability to function independently and had poor or no ability to behave in an emotionally stable manner.

In contrast, the ALJ identified numerous portions of the record that tended to demonstrate a lack of evidentiary support for the restrictions found by Dr. Smith and supported a conclusion

that the findings of Dr. Smith were inconsistent with the evidence of record as a whole. The ALJ provided good reasons for reaching the conclusion that Dr. Smith's restrictive findings were not supported by the record as a whole. First, the ALJ noted that Dr. Smith did not identify any objective findings from tests or observation to support such severe limitations [Tr. 25, 603-07]. Second, the ALJ observed that the severe limitations were inconsistent with Plaintiff's own admissions and testimony regarding her ability to function, her ability to interact with authority figures, her social interaction with friends and family, her ability to concentrate on television programs for hours at a time, and her ability to care for at least two of her five young grandchildren. [Tr. 25-26, 27, 44-46, 228-34, 269-75, 295-302, 305-12, 613]. Third, the ALJ explained that Dr. Smith did not discuss or explain the relationship between Plaintiff's well-documented illegal drug use and the severe limitations he indicated. [Tr. 26, 580, 603-07, 648-50]. Finally, the ALJ found that the overly-restrictive limitations appeared to be highly sympathetic to Plaintiff's subjective complaints. [Tr. 26, 605-07, 649-50].

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Court finds that the ALJ supplied good reasons, because he discussed a number of the considerations identified in 20 C.F.R. §§ 404.1527and 416.927, including: nature and extent of the treatment relationship, § 404.1527(d)(2)(ii); amount of relevant evidence that supports the opinion, § 404.1527(d)(3); the opinion's consistency with the record as a whole, § 404.1527(d)(4); and other factors which tend to support or contradict the opinion, § 404.1527(d)(6). The Court finds that the ALJ complied with his statutory obligations, and his decision not to afford weight to the overly restrictive portions of Dr. Smith's opinions is supported by substantial evidence.

13

The undersigned finds that the Plaintiff's allegation of error regarding the weight afforded to Dr. Smith's opinion is not well-taken.

**B.     Opinion of Jodie Castellani, Ph.D.**

The Plaintiff next cites the Court to a form completed by Jodie Castellani, Ph.D., indicating that the Plaintiff has moderate to marked restrictions in her ability to: understand, remember, and carryout complex instructions; to make judgments on complex work-related decisions; to interact appropriately with the public, supervisors, and coworkers; and to respond to usual work situations. [Tr. 618-19]. Dr. Castellani completed a consultative examination of the Plaintiff and found that her mental restrictions correlated to her history of psychosis, which Dr. Castellani noted was doing better. [Tr. 618]. Dr. Castellani further explained, "The claimant appears to be predominately moderately impaired due to psychiatric reasons although she has apparently had episodes[/]periods of decompensation and marked impairment in the past . . . ." [Tr. 615].[3]

The Plaintiff argues that the ALJ erred by not affording additional weight to these findings and that, as a result, the ALJ's opinion is not supported by the evidence in the record. [Doc. 11 at 20-21].

The ALJ gave Dr. Castellani's opinion significant weight "because Dr. Castellani was able to interview and examine the claimant personally." [Tr. 27]. He noted, however, that Dr. Castellani believed the Plaintiff had exaggerated her symptoms during the examination. [Tr. 27]. Specifically, Dr. Castellani found that the Plaintiff "appeared to overrate herself and, given that other inconsistencies were also noted, there is concern about the validity of this present

---

[3] The majority of Dr. Castellani's opinion is contained in a six-page report, which has not been signed. Neither party has objected to Dr. Castellani's opinion based upon this lack of signature, and the Court has, therefore, addressed the substantive objections presented by the parties.

14

information . . . ." [Tr. 615].

The Court finds that the ALJ did not err in addressing and affording weight to the opinion of Dr. Castellani. The ALJ afforded great weight to the opinion and incorporated much of it into his final residual functional capacity finding. Dr. Castellani's notes regarding the Plaintiff's extensive daily activities – including cooking meals like spaghetti, shopping independently at grocers, maintaining her home, taking care of her grandchildren– and her doubts regarding the Plaintiff's credibility were consistent with the ALJ's findings. The Court finds that the weight afforded to the Dr. Castellani's opinions was supported by substantial evidence.

The Court finds that the Plaintiff's allegation of error relating to Dr. Castellani is not well-taken.

**C.      Opinion of Donna J. Bardsley**

Finally, the Plaintiff argues that the ALJ erred in addressing the opinion of Donna J. Bardsley, a vocational expert, as submitted by the Plaintiff outside of the hearing.

Counsel for the Plaintiff requested that Ms. Bardsley review the findings of Dr. Castellani and opine whether there was work available for the Plaintiff in the local and national economies, if the Plaintiff was limited to the extent indicated by Dr. Castellani. Ms. Bardsley opined, based upon these restrictions, that work would not be available to the Plaintiff. [Tr. 329-30].

The Plaintiff has not cited the Court to any regulation or case law that requires the ALJ to afford weight to Ms. Bardsley's open letter requested by Plaintiff's counsel and proffered to the Court. Anne Thomas, a vocational expert, was present at the hearing in this matter. The ALJ asked counsel for the Plaintiff if the Plaintiff had any objection to Ms. Thomas serving as the vocational expert, and counsel responded that the Plaintiff did not. [Tr. 38]. Ms. Thomas had the advantage of witnessing the Plaintiff's testimony, and Ms. Thomas's presence at the hearing

15

allowed both the ALJ and counsel for the Plaintiff to examine her and to pose hypothetical questions to her. Based on the foregoing, the Court finds that the Plaintiff has not demonstrated that the ALJ did not err in relying upon Ms. Thomas's testimony at the hearing, rather than the limited opinion of Ms. Bardsley.

Accordingly, the undersigned finds that the Plaintiff's allegation of error regarding vocational expert testimony is not well-taken.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing her past relevant work as a housekeeper, dishwasher, and cook helper. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 10]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

Case 3:11-cv-00308-TAV-CCS Document 17 Filed 03/19/12 Page 16 of 16 PageID #: 126